UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| SANTOS BENAVIDES, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 3-12-46 |
| § | |
| EMC MORTGAGE CORPORATION, § | |
| *et al*, § | |
| § | |
| Defendants. § | |

# MEMORANDUM AND ORDER

This is the latest, and it turns out final, ruling in Plaintiffs Santos and Carmen Benavides's suit challenging a threatened foreclosure on their home. In a previous Order, the Court ruled that Defendant law firm Brice, Vander Linden & Wernick, P.C. ("BVL") was improperly joined to defeat diversity jurisdiction and dismissed it from the case. *See* Docket Entry No. 21. Remaining is a motion for summary judgment filed by the other two Defendants: EMC Mortgage Corporation, which services Plaintiffs' mortgage, and U.S. Bank National Association ("USBNA"), the holder of Plaintiffs' mortgage loan.

In Plaintiffs' state court petition, which was never amended, they brought a number of claims and defenses to foreclosure including claims for breach of contract and for violations of the Texas Debt Collection Act ("TDCA"). Most of these claims challenged EMC's alleged failure to

1

properly consider Plaintiffs for a mortgage loan modification. However, in their response to Defendants' motion for summary judgment, Plaintiffs largely abandoned this approach in favor of a new, and contradicting, theory—that EMC had in fact told Plaintiffs they were approved for a modification but subsequently failed to perform. The Court has considered the parties' filings and the arguments made by counsel at a hearing before this Court, the relevant case law, and the facts of the case, and now **GRANTS** EMC and USBNA's motion for summary judgment.

**I.    BACKGROUND**

Plaintiffs purchased the home at issue in this suit (the "Property") in August 2005 and financed the purchase with a $60,800 mortgage loan from JLM Direct Funding, Ltd.[1] USBNA eventually became the holder of the mortgage, and EMC became the servicer. In early 2009, Plaintiffs became unable to meet their monthly mortgage payments, and went into default. After they defaulted, Plaintiffs contacted Defendants to discuss the possibility of obtaining a Home Affordable Modification Program ("HAMP") loan modification.

Exactly what came of Plaintiffs' discussions with Defendants concerning a modification is unclear, as Plaintiffs have changed their

---

[1] The factual recitation presented in this section is based on the summary judgment evidence viewed in the light most favorable to Plaintiffs.

allegations on this point over the course of the suit. In their petition, Plaintiffs alleged that they "were initially informed that they had been approved" for a modification but that they "were later told they did not qualify for a modification within their means." Docket Entry No. 1-4 at ¶ 20. Plaintiffs' interrogatory responses, however, are bereft of any statement that they were ever offered a modification: Plaintiff Santos Benavides states that he "tried to get a modification to $500 monthly" and "I talked to [USBNA] on the telephone about modifying the loan. I was trying to work with them, but that is when the modification fell through." Docket Entry No. 14-5 at 11, 14. Plaintiff Carmen Benavides similarly stated "I spoke with EMC in February of 2010. EMC said I should try for a modification or to sell my house." Docket Entry No. 14-6 at 16. Neither Plaintiff claimed any Defendant told them they had been approved for a modification. Finally, in affidavits attached to their summary judgment response, Plaintiffs for the first time claimed not only that EMC told them they were approved for a modification, but that EMC had accepted payments they made under that agreement:

> When our loan went into default, we reached out to EMC for a modification of the loan. We submitted documents, and EMC informed us that we were approved for a modification. EMC began accepting payments for our modification that eventually totaled in excess of $2,000.00. After making over $2,000.00 in payments to EMC after we had been told that we were

3

>approved for a modification, EMC notified us that our modification was denied. Our payments made under the modification were never returned, nor did EMC explain to us why we were not approved for the modification.

Docket Entry Nos. 16-1; 16-2.

EMC accelerated the loan and arranged for the Property to be sold at a foreclosure sale to be held on February 7, 2012. Before the sale could take place, Plaintiffs filed this suit in state court and obtained a temporary restraining order forbidding the sale from proceeding. Plaintiffs alleged breach of contract and violations of the TDCA, asserted defenses of waiver and quasi-estoppel to the threatened foreclosure, and requested that the Court quiet title in the Property and enter a declaratory judgment in their favor. Defendants timely removed to this Court. EMC and USBNA moved for summary judgment at the close of discovery in September 2012.

## II.   STANDARD OF REVIEW

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts on questions of fact must be resolved in favor

of the party opposing summary judgment. *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

### III. DISCUSSION

#### A. *Breach of Contract*

Plaintiffs first assert a claim for breach of contract against EMC "through USBNA." Originally, Plaintiffs argued that EMC breached the deed of trust by failing to consider Plaintiffs for the alternatives to foreclosure available under HAMP and the federal Home Affordable Foreclosure Alternatives ("HAFA") program. *See* Docket Entry No. 1-4 at ¶¶ 25–27. Subsequently, in their response to Defendants' motion, Plaintiffs argued that Defendants had committed a breach by informing Plaintiffs they were approved for a loan modification, accepting $2,000 in payments, and then denying Plaintiffs' application for a modification. *See* Docket Entry No. 16 at ¶ 10.

The plain language of the deed of trust bars Plaintiffs' original argument. Paragraph 22 of the deed sets forth Defendants' only contractual obligation to provide foreclosure alternatives:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that

> failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. . . .  If default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.

Docket Entry No. 14-3 at ¶ 22.  Thus, Defendants were only required to provide the required notice, specify in that notice an action required to cure the default, and give Plaintiffs 30 days to take that action.  *See Brooks v. Ocwen Loan Servicing, LLC*, No. H-12-1410, 2012 WL 3069937, at *5–6 (S.D. Tex. July 27, 2012) (interpreting identical contract thusly).  They were not required to consider Plaintiffs for any particular foreclosure alternatives or to make those alternatives available to Plaintiffs.  *See id.*  Defendants sent Plaintiffs the required notice, that notice specified that Plaintiffs could cure their default by paying "the full amount of the default" within 35 days of the date of the letter, and Defendants gave Plaintiffs at least 30 days to take that action.  Docket Entry No. 14-4; *see* Docket Entry Nos. 14-5 at 4–5 (admitting receipt of the notice); 14-6 at 7–8 (same).  Thus, Defendants fulfilled their contractual obligations.

Although Plaintiffs' new argument for breach of contract—that Defendants informed them they were approved for a loan modification and accepted $2,000 in payments before rejecting their modification

6

application—is not properly before the Court, *see infra* p. 10–11, it also fails on the merits as it is barred by the statute of frauds. Because Plaintiffs present no evidence of a written loan modification agreement and the loan was for more than $50,000, any oral modification agreement that may have existed is unenforceable. *See Gossett v. Fed. Home Loan. Mortg. Corp.*, -- F. Supp. 2d --, No. H-11-508, 2013 WL 321664, at *7 (S.D. Tex. Jan. 24, 2013) (citing Tex. Bus. & Com. Code. Ann. § 26.02(b)); *see also Brush v. Wells Fargo Bank, N.A.*, -- F. Supp. 2d --, No. H-10-5016, 2012 WL 5989204, at *17 (S.D. Tex. Nov. 29, 2012) ("Under the statute of frauds . . . any modification to [plaintiff's] original loan agreement was required to be in writing."). Thus, with no enforceable modification agreement to breach, Defendants' only contractual obligations are those contained in the deed of trust. They did not breach the deed by accepting $2,000 they were entitled to receive as payment for the amount owed on the original loan. *See* Docket Entry No. 14-4 at 4 (stating that as of March 2009 the amount owed by Plaintiffs was $2,184.06).

### *B. Texas Debt Collection Act*

Plaintiffs next claim that EMC committed several violations of the TDCA. In their petition, they allege that EMC violated the ban on "threatening to take an action prohibited by law," Tex. Fin. Code Ann.

§ 392.301(a)(8), when it threatened to foreclose before it had satisfied the requirements of the federal Making Home Affordable ("MHA") Program's guidelines, known as the "Handbook."  *See* Docket Entry No. 1-4 at ¶ 31–32.  They also claim EMC violated a separate TDCA prohibition on attempting to collect a debt by "misrepresenting the character, extent, or amount of a consumer debt" when it refused to respond to Plaintiffs' request for a payoff quote.  Tex. Fin. Code Ann. § 392.304(a)(8); *see* Docket Entry No. 1-4 at ¶ 33.  Next, they claim "EMC deceptively told the Benavides' that it was too late for them to be considered for a short sale or deed-in-lieu of foreclosure of their home" and thus violated the TDCA's catchall provision, which bans using "any other false representation or deceptive means to collect a debt."  Tex. Fin. Code Ann.  § 392.304(a)(19); Docket Entry No. 1-4 at ¶ 33.  Finally, they argue for the first time in their summary judgment response that EMC violated subsection 392.304(a)(19) by deceptively telling them "they were approved for a modification, when [EMC] had no intention to stay good on that word."  Docket Entry No. 16 at ¶ 13.

The Court previously addressed the legal insufficiency of Plaintiffs' first two TDCA claims, those arising under subsections 392.301(a)(8) and 392.304(a)(8), in its previous Order granting BVL's motion to dismiss.  *See*

Docket Entry No. 21 at 7–9.  In that Order, the Court ruled that a Defendant's threat to foreclose when the lender has failed to satisfy the MHA "Handbook" requirements does not amount to an action "prohibited by law" under subsection 392.301(a)(8).  *Id.* at 7–8.  It also ruled that a Defendant's failure to provide a payoff quote upon request, if unaccompanied by a "false or misleading assertion," does not violate subsection 392.304(a)(8).  *Id.* at 8–9.  Thus, because Plaintiffs' first two TDCA claims suffer from the same deficiencies as did their nearly identical claims against BVL, summary judgment must be granted in favor of EMC on those claims.

Plaintiffs' third TDCA claim also fails, though for lack of evidence rather than legal insufficiency.  In their petition, Plaintiffs alleged that EMC attempted to collect the debt owed it by deceptively telling them "that it was too late for them to be considered for a short sale or deed-in-lieu of foreclosure of their home."  Docket Entry No. 1-4 at ¶ 33.  But Plaintiffs have presented no evidence that EMC ever made any such misrepresentation.  They do not make this claim in the only evidence they submitted, their affidavits, *see* Docket Entry Nos. 16-1; 16-2, and they failed to state in their discovery responses that any such misrepresentation ever occurred.  *See* Docket Entry Nos. 14-5 at 9–10, 13–14; 14-6 at 12–13, 16–

9

17. Because there is no evidence in the record to support this claim, Plaintiffs have failed to raise a genuine issue of material fact regarding whether EMC deceptively told them it was too late for them to be considered for a short sale or deed-in-lieu of foreclosure.

Finally, summary judgment is also appropriate on Plaintiffs' fourth TDCA claim, that EMC falsely told them they were approved for a loan modification when it had no intention of agreeing to one.  Plaintiffs did not plead this theory of recovery in their petition and only raised it for the first time in their summary judgment response.  Although Plaintiffs did allege that they "were initially informed [by EMC] that they had been approved" for a modification but "were later told they did not qualify for a modification within their means," Docket Entry No. 1-4 at ¶ 20, they did not allege that EMC's initial statement was false or intended to deceive, or even that Plaintiffs themselves ever believed they had come to a modification agreement with EMC.  Moreover, they did not base any TDCA claims on that allegation or even mention the allegation in the section of the petition addressing the TDCA.  *See* Docket Entry No. 1-4 at ¶¶ 29–33.  Plaintiffs' petition as a whole is based almost entirely on the premise that EMC failed to even consider Plaintiffs for a loan modification or other foreclosure alternatives.  The single sentence quoted above, a sentence that did not even

mention deception on EMC's part, did not serve to put EMC on notice that Plaintiffs were additionally making the contradictory allegation that EMC violated the TDCA by falsely informing Plaintiffs they were approved for a modification. Thus, this claim is not properly before the Court. *See U.S. ex rel. Gudur v. Deloitte Consulting LLP*, 512 F. Supp. 2d 920, 956 (S.D. Tex. 2007) (holding that a relator–plaintiff could not defeat summary judgment on his conspiracy claim by raising a new factual basis for the claim for the first time in his summary judgment response); *Allstate Ins. Co. v. Plambeck*, No. 3-08-CV-0388-M-BD, 2012 WL 2130982, at *3 (N.D. Tex. Jan. 4, 2012) ("[Plaintiffs] are bound by the representations of their attorney and will not be permitted to rely on an unpled theory of recovery to defeat summary judgment."). Summary judgment is appropriate on this claim.[2]

---

[2] Even if this claim were properly before the Court, Plaintiffs have not raised a genuine issue of material fact regarding whether EMC falsely told them they were approved for a modification. As Defendants point out, Plaintiffs' only evidence—their own affidavits—are in conflict with their sworn interrogatory responses. Plaintiffs state in their affidavits that "[w]e submitted documents, and EMC informed us that we were approved for a modification. . . . After making over $2,000.00 in payments to EMC after we had been told that we were approved for a modification, EMC notified us that our modification was denied." Docket Entry Nos. 16-1; 16-2. Yet, in her sworn interrogatory responses, the only representation by EMC that Plaintiff Carmen Benavides identified was that EMC told her she "should try for a modification or to sell [her] house." Docket Entry No. 14-6 at 16. And Plaintiff Santos Benavides stated that he never talked to EMC, Docket Entry No. 14-5 at 14, though he did state that he "talked to [USBNA] on the telephone about modifying the loan. I was trying to work with them, but that is when the modification fell through." *Id.* Even if the Court assumes that Plaintiff Santos Benavides meant to state that he spoke to EMC rather than to USBNA, Plaintiffs' responses are in conflict with their later affidavit statements that EMC informed them they were approved for a modification. Thus, because it is settled law that a "nonmovant cannot defeat a motion

11

### *C. Defenses to Foreclosure—Waiver and Quasi-Estoppel*

Plaintiffs also argue that their defenses of waiver and quasi-estoppel bar EMC from accelerating the loan and posting the Property for sale. Although Defendants argue that Plaintiffs may not raise these defenses since Defendants have not asserted a claim for affirmative relief, the deed of trust explicitly gives Plaintiffs "the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." Docket Entry No. 14-3 at ¶ 22; *see Nolasco v. CitiMortgage, Inc.*, No. H-12-1875, 2012 WL 3648414, at *5 (S.D. Tex. Aug. 23, 2012). Thus, these two defenses are properly before the Court.

Nonetheless, neither waiver nor estoppel bars EMC from foreclosing on the Property. Plaintiffs originally argued that EMC waived its right to foreclose when it (allegedly) made an initial offer to consider them for a modification, and now argue that EMC waived by actually finding Plaintiffs eligible for a modification. However, "[w]aiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Nolasco*, 2012 WL 3648414, at *5 (quoting *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008)). The deed

---

for summary judgment by submitting an affidavit which directly contradicts, without explanation, his prior testimony," Plaintiffs' affidavits are insufficient to create a genuine issue of material fact on their final TDCA claim. *Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 228 (5th Cir. 1984) (citing *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980)).

of trust specifically states that "[a]ny forbearance by Lender in exercising any right or remedy . . . shall not be a waiver of or preclude the exercise of any right or remedy." Docket Entry No. 14-3 at ¶ 12. This contractual language makes clear that EMC's alleged consideration of Plaintiffs for a modification was not intended to function as a waiver and was not inconsistent with proceeding with foreclosure. Thus, Plaintiffs' affirmative defense of waiver fails. *See Nolasco*, 2012 WL 3648414, at *5.

As for quasi-estoppel, that defense "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). "Thus, quasi-estoppel forbids a party from accepting the benefits of a transaction and then subsequently taking an inconsistent position to avoid corresponding obligations or effects." *Lindley v. McKnight*, 349 S.W.3d 113, 131 (Tex. App.—Fort Worth 2011, no pet.). Plaintiffs contend that the defense applies because EMC publicly claims to follow the MHA guidelines and offers an array of foreclosure alternatives to debtors in default, and thus it would be inconsistent for it to proceed with foreclosure without considering Plaintiffs for these alternatives. In Plaintiffs' view, EMC's failure to consider Plaintiffs for these alternatives "is completely inconsistent with its offer to consider Plaintiffs under each of

13

these programs." Docket Entry No. 1-4 at ¶ 38.

However, this argument ignores the fact that the only "offer" made to Plaintiffs is that contained in the deed of trust. Even if EMC failed to follow the federal MHA, HAMP, or HAFA guidelines regarding foreclosure alternatives, that failure, if it occurred, is irrelevant to EMC's obligations to Plaintiffs under the deed of trust. As already discussed, *see* discussion *supra* Part III.A, EMC fulfilled its only obligations regarding foreclosure alternatives under the deed—it sent Plaintiffs a notice specifying an action required to cure the default and gave Plaintiffs 30 days to take that action. Thus, because EMC fulfilled its contractual obligations, it did not act inconsistently with any offer to Plaintiffs, and quasi-estoppel is inapplicable. *See Nolasco*, 2012 WL 3648414, at *5 (holding similarly); *see also Lindley*, 349 S.W.3d at 131 (collecting cases holding parties to be estopped when they tried to avoid obligations required under contracts from which they had benefitted).

### D. Suit to Quiet Title

Plaintiffs' fifth issue is a suit to quiet title in the property. They allege that EMC "sought to enforce the foreclosure sale . . . without full consideration of whether the Benavides' exhausted each of the available foreclosure prevention and alternative options" and that as a result "the

Benavides' have been damaged in that they have unjustly lost the title to their homestead, they have been penalized with incorrect and derogatory credit reporting, and they have lost the opportunity to earn the incentive money offered to borrowers under the HAMP and HAFA programs." Docket Entry No. 1-4 at ¶¶ 41–42.

To state a claim in a suit to quiet title, Plaintiffs must show "(1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." *Strange v. Flagstar Bank, FSB*, No. 3:11-cv-2642-B, 2012 WL 987584, at *4 (N.D. Tex. Mar. 22, 2012). Moreover, Plaintiffs must prove their case on the strength of their own title, not the weakness of EMC's title. *Woods v. Bank of Am., N.A.*, No. 3:11-CV-1116-B, 2012 WL 1344343, at *9 (N.D. Tex. Apr. 17, 2012) (citation omitted); *see Bell v. Bank of Am. Home Loan Servicing LP*, No. 4:11-cv-2085, 2012 WL 568755, at *7 (S.D. Tex. Feb. 21, 2012) (citation omitted).

Plaintiffs' claim against EMC fails for two reasons. First, Plaintiffs' argument that EMC's claim to the Property is invalid or unenforceable is entirely contingent on the success of its breach of contract claim, waiver defense, or quasi-estoppel defense—all of which the Court has already rejected. Second, even if EMC's claim were held invalid or unenforceable,

Plaintiffs' claim hinges on their allegation that EMC's title is flawed; they do not plead that their own title is superior. *See Bell*, 2012 WL 568755, at *7 (dismissing suit to quiet title because the plaintiff did not "assert a superior title, and alleges no facts to support a superior claim"). Because of these defects, summary judgment is appropriate on Plaintiffs' suit to quiet title.

### E. Declaratory Judgment

Lastly, Plaintiffs request a declaratory judgment. However, because a federal declaratory judgment action creates no substantive rights, it requires the existence of a justiciable controversy between the parties. *Bell*, 2012 WL 568755, at *8. Thus, since summary judgment is appropriate on all of Plaintiffs' substantive claims, their action for a declaratory judgment is "redundant" and must be denied. *Swim v. Bank of Am., N.A.*, No. 3:11-CV-1240-M, 2012 WL 170758, at *8 (N.D. Tex. Jan. 20, 2012).

## IV.  CONCLUSION

For the reasons discussed above, this Court holds that Plaintiffs cannot prevail on any of their claims or affirmative defenses. Defendants' Motion for Summary Judgment (Docket Entry No. 14) is **GRANTED** in full.

**IT IS SO ORDERED**.

**SIGNED** this 31st day of January, 2013.

```
                               _____
                                         Gregg Costa
                                 United States District Judge
```